Jian CHEN, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 99–71546.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 13, 2000.

Submitted Feb. 22, 2002.

Filed May 13, 2002.

Timothy A. Nelson, Darrel S. Jackson, Brown & Bain, P.A., Phoenix, AZ; H. Elizabeth Dallam, Florence Immigrant & Refugee Rights Project, Inc., Tucson, AZ, for the petitioner.

Matthew R. Hall, Office of Immigration Litigation, Department of Justice, Washington, DC, for the respondent.

Before: SCHROEDER, Chief Judge, NOONAN and W. FLETCHER, Circuit Judges.

NOONAN, Circuit Judge.

Jian Chen petitions for review of the order of the Board of Immigration Appeals (the Board) denying his application for asylum and withholding of deportation. Reversing the Board, we grant Chen's petition.

## FACTS

Jian Chen was born July 14, 1979 in Fujian Province, China. He lived with his parents, his sister and his brother in a small village in that province. In 1995, at the age of sixteen, he moved from the village to Fuzhou City to work as an apprentice builder, earning approximately $200.00 per week.

Chen's mother, Zhang Xi Mei, had meanwhile, between 1994 and 1996, been working as a "money dealer" for a private bank. The bank collapsed, and his mother owed at least $175,000. In 1997, a depositor secured a judgment against her for the loss of its deposit. When neither his mother nor his whole family was able to pay the judgment, the government threatened to imprison the entire family. His mother, father, brother and sister went into hiding. He escaped to the United States, going into debt to smugglers known as "snakeheads."

## PROCEEDINGS

In 1998, Chen applied for asylum and withholding of deportation. He testified to his fear of imprisonment by the People's Republic of China (the PRC) and of reprisal and torture by the snakeheads if he was returned to the PRC. The Immigration Judge found his testimony credible. Also testifying on his behalf was Dean G. Rojek, associate professor of sociology at the University of Georgia, the author of four studies on the methods of social control practiced by the government of the PRC, and four times a lecturer in China at the invitation of the PRC's Ministry of Justice. Rojek testified that the snakeheads were, "an enormous organization," "very, very pervasive," and "very, very powerful." Those who failed to pay debts owed to the snakeheads would have to pay "the ultimate price," by facing "torture" involving "dismemberment of some sorts or other" and even death. Rojek testified

that Jian Chen was certain to be arrested on his return and that the PRC would not protect him from the snakeheads because the existence of the snakeheads as a criminal syndicate was not acknowledged by the PRC. "To intercede" for Jian Chen would be to admit their existence and so "to lose face," which "the Chinese government simply is not going to do...."

The Immigration Judge ruled that Jian Chen was not being persecuted because of membership in a social group because a family was "not the type of social group contemplated by the statute." The judge also ruled that, if he were imprisoned for illegally leaving the PRC, such punishment would not constitute persecution. As to the snakeheads, the judge treated as dispositive a Country Report of the State Department, April 14, 1998, which in its entirety reads as follows as to the snakeheads:

> China appears to be taking active measures to target people smugglers and stop illegal departures by economic migrants. Several scores of people smugglers and Fujian officials reportedly have been convicted, fired from jobs, or expelled from the Communist Party. In Changle country alone at least 11 "snakeheads" (smuggling ringleaders) have been arrested. The Chinese Ministry of Public Security has increased its patrol of the Chinese coastline, intercepting ships engaged in alien smuggling, and preventing illegal migrant passengers from departing.

On April 2, 1999, the judge denied Jian Chen's application.

Jian Chen had escaped from China by agreeing to pay the Chinese smugglers, popularly known as "snakeheads," nearly $40,000. Apprehended in this country, he became a witness for the government in *United States v. Chen Biao et al.* (98cr2812 BTM), the prosecution of seven persons

charged with the smuggling of approximately 150 citizens of the People's Republic of China into this country on a Belizean-registered fishing vessel, the Chik Yung. According to John H. Gomez, the Assistant United States Attorney who prosecuted the case in the Southern District of California, the trial lasted over two months and resulted in the conviction of the four principal defendants; the jury could not agree as to the other three, and the government ultimately dismissed the charges against them.

The trial took place in the spring of 1999. AUSA Gomez, in a letter of June 30, 1999, to the Commissioner of the Immigration and Naturalization Service on Jian Chen's behalf, noted that "the case was very highly publicized both here and in the PRC." Gomez added: "the witnesses themselves universally stated to us that they would face great harm if returned to the PRC because of their status as witnesses in this case." Gomez also noted that even when the seven defendants were in custody they threatened the witnesses against them. Gomez recommended to the INS Commissioner that Jian Chen be permitted to remain legally in the United States because "he faces a serious threat of retaliation because of his status as a witness ...." This letter was made part of the administrative record on July 22, 1999.

The Board in an opinion agreed with Chen as follows: "The family has been recognized as a social group, such that persecution on account of family membership can serve as a basis for asylum. See *Gebremichael v. INS*, 10 F.3d 28 (1st Cir. 1993); *Sanchez–Trujillo v. INS*, 801 F.2d 1571 (9th Cir.1986)." But the Board went on to say: "The claim fails because, if imprisoned, the respondent would not be imprisoned merely because of his status as a member of a particular social group. Rather, if the respondent is imprisoned, it would be because the government has imputed to the respondent responsibility for a criminal offense committed by members of the group. Thus, even though his family may be considered a particular social group, his imprisonment would not be on account of his membership in that particular social group."

As to his fear of torture by the snakeheads, the Board stated: "Finally, given that the Department Profile on China indicates that the Chinese government has made recent efforts to prosecute smugglers, there is no objective basis for believing that the Chinese government would acquiesce in allowing smugglers to torture the respondent." On November 10, 1999, the Board dismissed the appeal.

## ANALYSIS

■ Dicta in one of our cases say that "a family" is not "a particular social group" as defined by 8 U.S.C. § 1101(a)(42)(A). *Estrada–Posadas v. INS*, 924 F.2d 916, 919 (9th Cir.1991). But "the family" the court spoke of in that case consisted of "a cousin" of unidentified degree, an "uncle," and "relatives on her mother's side of the family." *Id.* at 918. It was not a nuclear family. As other dicta of this court have put it: "Perhaps a prototypical example of a 'particular social group' would consist of the immediate members of a certain family, the family being a focus of fundamental affiliational concerns and common interests for most people." *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir.1986). It is this language that was adopted as law by the First Circuit in Gebremichael, supra. And it is the law of our circuit. *Hernandez–Montiel v. INS*, 225 F.3d 1084, 1092 (9th Cir.2000); *Hernandez–Ortiz v. INS*, 777 F.2d 509, 515 (9th Cir.1985). As the Board's opinion in this case noted, it is the position of the administrative agency entitled to Chevron deference in its interpretation of a phrase in the statute it

administers. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[1]

■ That being settled, the question of law to be resolved is whether punishment of a family member for a crime committed by his mother is punishment for the crime or is punishment "on account of" membership in the family. On this question, the Board has no special expertise. We agree that in the eyes of the government of China the punishment would be for the crime. But we also observe that it is only on account of membership in the family that Jian Chen would be deemed punishable. It is not necessary that persecution be solely on account of one of the forbidden grounds for an asylum applicant to secure asylum. It is enough that a principal reason for the persecution be on account of a statutory ground. See *Agbuya v. INS,* 241 F.3d 1224, 1228 (9th Cir. 2001); *Singh v. Ilchert,* 63 F.3d 1501, 1509 (9th Cir.1995). So here, Chen has provided credible evidence, subjective and objective, of fear of future persecution by the PRC on account of his membership in his family.

An analogy may elucidate the Board's error. If a member of a particular ethnic group assassinated a member of the ruling party in a dictatorship, the rulers might punish the entire ethnic group, imputing to them vicarious responsibility for their fellow ethnic's crime; such a procedure would be punishing the group both on account of the crime and on account of membership in the group. It would be ethnic persecution. So here, Jian Chen would be punished not only for his mother's default but precisely on account of his membership in her family. Jian Chen, who was a boy earning no more than $9,600 per year, would be punished not for personally being unable to pay $175,000 but for belonging to the small social group that is his family.

The punishment Jian Chen would suffer would not merely be incarceration in a prison of the PRC, where, according to the State Department Country Report, torture is frequent. It would also be punishment at the hands of the snakeheads. According to his own credible testimony and that of his expert Rojek, a highly probable accompaniment of his imprisonment would be torture by the snakeheads operating with the acquiescence of the PRC. The State Department Country Report, relied on by both the IJ and the Board, dealt only with the PRC's prosecution of a handful of snakeheads for facilitating illegal emigration from China; the Report said absolutely nothing as to the PRC's acquiescence in the activities of this powerful and pervasive organization in the prisons of the PRC. Nor did the Board take any account of AUSA Gomez's letter, which had become part of the administrative record. According to Gomez, there was a high degree of danger of reprisal by the snakeheads against Jian Chen. And if Rojeck was right as to the snakeheads' usual methods of debt collection, torture, dismemberment and death were what Jian Chen had to expect. Saying nothing at all on the subject of the testimony of Jian Chen and Rojek or Gomez's letter, the Report does not constitute substantial evidence refuting what they said. We are forced to conclude that, if returned to the PRC, it is more likely than not that Jian Chen, persecuted on account of his family, will not only be imprisoned but, with the

---

1. That we have recognized that "a prototypical example" is the nuclear family does not imply that other sets of identified close family relationships might not qualify as a social group.

acquiescence of the PRC, tortured and killed while in prison.

Petition for review GRANTED.