Denbo TOURAY, Petitioner,

v.

John ASHCROFT, Respondent.

Docket No. 01–4128.

United States Court of Appeals,
Second Circuit.

Jan. 20, 2004.

E. Dennis Muchnicki, Dublin, OH, for Petitioner.

Megan L. Brackney, Assistant United States Attorney for the Southern District of New York, for Respondent.

PRESENT: WINTER, JACOBS and STRAUB, Circuit Judges.

## SUMMARY ORDER

Denbo Touray ("Touray") a citizen of Gambia, petitions this Court to review the July 19, 2001 order of the Board of Immigration Appeals ("BIA") dismissing his appeal from the denial, by an Immigration Judge ("IJ"), of Touray's application for asylum, withholding of removal, and voluntary departure pursuant to 8 U.S.C. §§ 1158(a) and 1231(b)(3). Touray argues that the BIA erred in concluding that he failed to establish past persecution or a well-founded fear of future persecution based on his "membership in a particular social group," *i.e.*, his family. *See* 8 U.S.C. § 1101(a)(42)(A).

Touray entered the United States in April, 1989 on a six-month, non-immigrant visitor's visa and remained in country beyond October, 1989 without INS authorization. On July 22, 1994, the democratically elected government of Gambia was deposed in a coup by the Gambian National Army. Around this time, authorities arrested Touray's father, a former official in the deposed regime, and accused him of embezzlement. In September, 1994, Touray filed an application for asylum and withholding of deportation, citing, *inter*

*alia,* the "political situation" in Gambia and his fear that he would be arrested upon his return. In June, 1995 the INS initiated deportation proceedings against Touray for overstaying his visa.

An applicant for asylum bears the burden of establishing that past persecution took place or that his fear of future persecution is well-founded. *Zhang v. Slattery,* 55 F.3d 732, 738 (2d Cir.1995). We review the BIA's factual findings under the substantial evidence standard, and will "reverse only if no reasonable fact-finder could have failed to find the past persecution or fear of future persecution necessary to sustain the petitioner's burden." *Diallo v. INS,* 232 F.3d 279, 287 (2d Cir. 2000).

At his hearing before the IJ, Touray testified that he had never been mistreated or persecuted, nor had anyone in his family when he was in Gambia. As to future persecution, Touray cited fear of arrest through imputation to him of the embezzlement allegations against his father. The only corroboration was a letter from his sister saying that Touray's father had been jailed on embezzlement charges and that the authorities would jail Touray if he returned. Touray testified that most of his immediate family continues to live unmolested in Gambia.

The BIA said the "record reflect[ed] that [Touray's] father was imprisoned for embezzlement of government funds," but ruled that "[p]rosecution for such offense does not, without more, rise to the level of persecution," and that "[Touray's] abbreviated testimony fail[ed] to establish any basis for relief concerning his alleged fear ... of persecution based on his relationship to his father." On these facts, Touray has failed to produce evidence "such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed," *INS v. Elias–Zacarias,* 502 U.S.

478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); without such evidence, this Court will not disturb the BIA's findings. *Diallo,* 232 F.3d at 287.

Petitioner relies on *Chen v. Ashcroft,* 289 F.3d 1113 (9th Cir.2002), *vacated,* 314 F.3d 995. In that case, Chen sought (and prior to vacatur, was granted) review of his petition for asylum. *Id.* at 1117. The record contained: (i) Chen's testimony that he fled China for the United States in 1997 after the Chinese government threatened to imprison his entire family for a debt owed by Chen's mother, *id.* at 1114; (ii) expert testimony, based on objective research, that Chen would be tortured (and possibly killed) upon his return to China; and (iii) a letter from Assistant United States Attorney John H. Gomez to the effect that, because Chen had testified for the United States against certain smugglers whose colleagues operated in Chinese prisons, Chen was a likely candidate for persecution upon his incarceration for his mother's debts. *Id.* at 1114–16. Nothing of the sort supports Touray's application; nor did he arrive in the United States in flight from the feared persecution.

Furthermore, the record supports the view that questioning of Touray by Gambian authorities would be prompted by the idea that certain of his father's assets are in Touray's name. And the record is unclear as to what these assets are and whether Touray currently has access to them. In contrast, the Ninth Circuit's account in *Chen* makes clear that the Chinese government sought to imprison Chen's entire family for a debt Chen's mother could not pay—not a debt that was in Chen's name. *Id.* at 1114.

\*     \*     \*     \*     \*     \*

In summary, substantial evidence supports the conclusion that Touray has not

established eligibility for asylum by demonstrating past persecution or a well-founded fear of future persecution. Having failed to satisfy the threshold for asylum, Touray's claim for withholding of deportation necessarily fails. *Zhang,* 55 F.3d at 738.

The petition for review is **DENIED.**