

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2006

# Qiu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1285

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Qiu v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1722.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1722

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1285
_____

HE QIN QIU

Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,

Respondent
_____

On Petition for review of an Order of the Board of Immigration Appeals
INS No . A 96-108-951
Immigration Judge: Honorable Grace A. Sease
_____

Submitted Under Third Circuit LAR 34.1(a) January 13, 2005

Before: ROTH, FUENTES, and ROSENN, Circuit Judges.

(Filed January 24, 2006)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

He Qin Qiu appeals a decision of the Board of Immigration Appeals ("BIA")

affirming without opinion the Immigration Judge's ("IJ") denial on February 26, 2004, of

his application for asylum, withholding of removal, and relief under the Convention

Against Torture ("CAT").

The BIA issued a *per curiam* order assuming the credibility of Qiu's testimony, but otherwise agreeing with the IJ that Qiu had not met his burden of proving eligibility for asylum, 8 U.S.C. § 1158(b)(1)(B)(i), withholding of removal, 8 U.S.C. § 1231(b)(3), or relief under the CAT, see 8 C.F.R. § 1208.16(c). The BIA accordingly dismissed Qiu's appeal.

Qiu timely appealed the decision of the BIA. We have jurisdiction under 8 U.S.C. § 1252(b)(2) & (d). Qiu argues that he established a well-founded fear of persecution making him eligible for asylum. Specifically, he contends that the BIA and IJ erred in finding that he had failed to establish persecution on the basis of membership in a disfavored class, arguing that his persecution was based on membership in his family, which qualifies as a "social group" for the purposes of 8 U.S.C. § 1101(a)(42)(A). He also argues that the IJ's finding that he could safely relocate within China, making him ineligible for asylum under 8 C.F.R. § 1208.13(b)(2)(ii), was not supported by substantial evidence. Finally, Qiu argues that the BIA erred in denying his request for relief under Article III of the CAT based on the IJ's finding that he would not be subject to torture "by or at the instigation of or with the acquiescence of a public official or person acting in an official capacity." Qiu argues that he has proven a likelihood of torture at the hands of the Chinese government and that he should be protected under the CAT.

We deny the petition for review because the BIA's conclusions that Qiu failed to establish a well-founded fear of persecution or a likelihood of torture are supported by

2

substantial evidence on the record.

I.

Qiu is a twenty-one-year old native of the People's Republic of China. He left China in March of 2003, traveling a circuitous path to the United States, which led him through Hong Kong, Israel, the Dominican Republic, and finally, Puerto Rico, where he was apprehended by the Immigration and Nationalization Service on August 26, 2003. He was charged with removability under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(1) (illegal entry). At a hearing before an IJ in Puerto Rico on September 23, 2003, Qiu conceded that he was a citizen of China, and that he had entered Puerto Rico illegally and without valid papers, and the IJ found him removable. He was then sent to York, Pennsylvania, where he remains incarcerated. Qiu's petition for asylum, withholding, and relief under the CAT was heard on February 26, 2004.

Because the BIA assumed the truth of Qiu's testimony in affirming the IJ's decision, we also accept it as true for the purposes of this appeal. Qiu is from the village of Hujiang, Fujian Province. In August of 2002, his father was unemployed and incurred a large gambling debt to the village chief, totaling approximately 360,000 yuan (equivalent to about 45,000 U.S. dollars). The village chief threatened to arrest Qiu and hold him hostage in order to force his father to pay the debt.

Subsequently, on the evening of October 5, 2002, the village chief came to Qiu's family home with some of his henchmen and demanded repayment of the debt. They threatened his father and told him that if the debt was not repaid, they would chop off

3

Petitioner's arms and legs. They also told his father that if he reported the threats to the authorities he would "have bigger problems." Qiu's mother immediately took him to another part of the village to hide him. His father also went into hiding, where he remains. His mother and one of his sisters reside with a friend in a nearby village. The village chief continues to search for petitioner.

The incident was never reported to the authorities. Qiu remained in hiding until his mother made arrangements for him to leave China. His mother borrowed money from friends to pay a smuggler to get Qiu out of the country, but he stated that he does not think his mother could have borrowed money in order to pay off his father's gambling debts. He also stated that if he returns to China, the village chief and his henchmen will "give [him] problems."

Qiu also submitted documentary evidence. He submitted a Household Register demonstrating that he was registered in the village and province that he had stated he was from. He also submitted a sworn statement and two letters, one from his mother and one from a woman to whose home Qiu's mother had taken him on the night of the incident in which he and his father were threatened. The Government submitted two State Department reports on China and a United Kingdom Home Office Assessment.

The letter from Qiu's mother (the authenticity of which the IJ doubted,[1] but which

_____

[1]The IJ stated in his opinion: "[T]hese letters have all the indicia of being fabricated . . . . They both seem to say essentially the same thing as if they were written or fabricated by the same hand. The letter from [the neighbor] essentially repeats almost word for word everything said in the letter from the mother. There is no indicia of reliability in these

4

we accept as authentic for the purposes of deciding this petition) reiterates the events testified to by Qiu. She states that after the village chief came to her home and uttered the threats, she took her son to the home of a friend, Chen Hua, for hiding. But the family ultimately determined that it was "not a solution to hide there forever," and that Qiu would have to leave China. Qiu's mother stated that with help from friends and relatives, they were able to get him out of China about six months later.

The other letter submitted by Qiu is from Chen Hua, in whose home Qiu hid. Chen Hua states in the letter that Qiu's mother came to the house crying, and told her of the incident and her husband's gambling debts. She agreed to hide Qiu, and he stayed there until he left China.

The IJ denied Qiu's claim for asylum, withholding of removal and relief under Article III of the CAT in an oral decision affirmed by the BIA without opinion on January 13, 2005. The IJ expressed reservations about Qiu's credibility and the authenticity of the letters submitted by Qiu in support of his claims.

The IJ also found that the documentary evidence submitted by the Government, including the State Department and United Kingdom reports, undercut Qiu's credibility. The IJ noted China's large population, which includes a large "floating population," or persons not residing at their registered addresses, and observed that "[i]nternal flight is a very real alternative in this case." The IJ found that Qiu had failed to establish that he

letters. We know they were sent from China and that's about it. They are not sworn to."

was being persecuted on the basis of his race, nationality, religion, or membership in a particular social group, because "[t]he only social group that he might possibly be identified under is that of a young man whose father apparently was a gambler and lost money to someone who was in a position of authority." The IJ also noted that Qiu had failed to seek the help of government authorities and that he had not suffered any past persecution.

The IJ rejected Qiu's claims for withholding of removal, which requires a higher showing of a likelihood of persecution than a claim for asylum, and his claim for relief under the CAT, stating that Qiu "has not established that he would be subject to torture by or at the instigation of or with the consent or acquiescence of a public official or person acting in an official capacity."

II.

Because the BIA affirmed without opinion, we review the IJ's opinion under the same standards of review as we would a decision of the BIA. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). The BIA noted in its order affirming the IJ's decision that "[e]ven accepting the respondent's testimony as true, we agree with the Immigration Judge that the respondent has not met the burden of proving eligibility for asylum, withholding of removal, or relief under the CAT," so for the purposes of this appeal, we accept Qiu's testimony as true. See Kayembe v. Ashcroft, 334 F.3d 231, 234–235 (3d Cir. 2005). Accordingly, we have no credibility finding to review. Id. at 235.

A grant or denial of asylum is reviewable for abuse of discretion. Reynoso-Lopez

6

v. Ashcroft, 369 F.3d 275, 278 (3d Cir. 2004). The IJ's factual determinations should not be overturned unless a reasonable factfinder would be compelled to conclude to the contrary. Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001). We review questions of law *de novo*. United States v. Torres, 383 F.3d 92, 95 (3d Cir. 2004).

An alien is eligible for asylum if he or she is a refugee within the meaning of 8 U.S.C. § 1101(a)(42). A refugee is someone who "is unwilling or unable to avail himself . . . of the protection of [his native country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A). A showing of past persecution gives rise to a rebuttable presumption that the alien has a well-founded fear of future persecution." 8 C.F.R. § 1208.13(b)(1). An alien who does not establish past persecution may establish a well-founded fear of future persecution if he demonstrates a that he has a genuine, subjective fear of persecution and that a reasonable person in his circumstances would fear persecution if returned to his native country. Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003).

The IJ made several findings that, on their own, are sufficient to disqualify Qiu for asylum. First, the IJ found that Qiu had not been subject to persecution on the basis of his membership in a "social group" within the meaning of 8 U.S.C. § 1101(a)(42)(A). Secondly, the IJ held that Qiu had not established a well-founded fear of persecution. Finally, the IJ held that Qiu could relocate safely within his country of origin, which makes an alien ineligible for asylum under 8 C.F.R. § 1208.13(b)(2)(ii).

7

In order to establish eligibility for asylum on the basis of membership in a particular social group, an alien must identify the social group, demonstrate that he is a member of that social group, and that he was persecuted on the basis of membership in the group. See, e.g., Lukwago v. Ashcroft, 329 F.3d 157, 170 (3d Cir. 2003). This Circuit has adopted the BIA's definition of "social group," as a "group of persons all of whom share a common, immutable characteristic." Lukwago, 329 F.3d at 171 (quotation omitted).

Qiu argues that the IJ erred in failing to consider his family as a social group for the purposes of determining his eligibility for asylum.[2] It does not appear that Qiu raised this argument before the IJ. Nor did he indicate that he was seeking asylum on this basis on his asylum application, on which he checked only boxes for asylum based upon political opinion and withholding of removal under the CAT.

Even if he did not waive this argument, however, the petition for review should be

_____

[2]This Court has adopted the BIA's recognition that kinship ties are an "innate" "shared characteristic." In re Acosta, 19 I.&N. Dec. 211, 233 (1985), overruled in part by In re Mogharrabi, 19 I.&N. Dec. 439 (1987); accord Singh v. Gonzales, 406 F.3d 191, 196 n.5 (3d Cir. 2005). Kinship is not a vague, all-encompassing, or amorphous category such as courts have rejected as constituting social groups within the meaning of the asylum statute. See, e.g., Escobar v. Gonzales, 417 F.3d 363, 367 (3d Cir. 2005) (Honduran street children were not a "social group" within the meaning of the asylum statute); Lukwago, 329 F.3d at 178 (children as a whole was too large and diverse a group to constitute a "social group," but former child soldiers who had escaped captivity could constitute a "social group" because of their shared past experience). Accordingly, Qiu's family does qualify as a "social group" within the meaning of 8 U.S.C. § 1101(a)(42)(A). Accord Chen v. Ashcroft, 289 F.3d 1113, 1115 (9th Cir. 2002); Gebremichael v. INS, 10 F.3d 28, 36 (1st Cir. 1993).

denied because the IJ's decision rests on two additional grounds, each of which is adequate on its own to sustain the decision – Qiu's failure to meet his burden to establish a well-founded fear of persecution, and the IJ's finding that he could safely relocate within China, and was therefore not eligible for asylum.

The IJ found that Qiu had not established a well-founded fear of persecution. He alleged no evidence of past persecution. Accepting his testimony as true, it is not sufficient to establish an objective fear of future persecution. Abdulrahman, 330 F.3d at 592. Persecution includes threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom. Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001). Although Qiu was indeed threatened with serious harm and loss of freedom, it appears from the record that Qiu and his family could have taken other steps to avoid the threat. For example, they could have reported the threats to the authorities. Qiu claims that the village chief threatened him if he reported the incident to the authorities. But Qiu and his family could have sought help at a higher level of government. They made no attempt to do so. Instead, they immediately went into hiding, and although they managed to raise the money to pay a smuggler, they apparently did not attempt to raise money to pay off the gambling debt, a much more direct way to address the threat. None of Qiu's documentary evidence tends to provide objective support for his claim. Accordingly, Qiu has not supported his subjective fear of persecution with "'objective evidence that persecution is a reasonable possibility.'" See Lin, 238 F.3d at 244 (quoting Chang v. INS, 119 F.3d 1055, 1066 (3d Cir. 1997)); Abdulai, 239 F.3d at

9

553–554 (holding that the BIA may require otherwise credible aliens to provide corroborating evidence for their claims in some cases).

Finally, as the IJ observed, whatever persecution Qiu suffered was not done by a government actor acting within the scope of his official duties. Rather, even accepting that the village chief was a public official, he was not acting in his official capacity, but as a "result of personal animosity as opposed to government animosity." There is no evidence that the Chinese government was unwilling or unable to address this threat because Qiu never sought the help of governmental authorities. See Abdulrahman, 330 F.3d at 592.

The IJ also found that Qiu was ineligible for asylum because he could safely relocate within China. 8 C.F.R. § 1208.13(b)(2)(ii) ("An applicant does not have a well-founded fear of persecution if [he] could avoid persecution by relocating to another part of [his] country of nationality . . . if under all the circumstances it would be reasonable to expect [him] to do so."). Qiu presented no evidence or convincing arguments to contradict the IJ's finding that he could safely relocate. Contrary to his contention in his brief that "the background documents show that China's strict household registration system . . . would make it virtually impossible for Mr. Qiu to safely relocate to another part of China," the background documents demonstrate that the household registration system does not totally prohibit relocation and that "the ability of most citizens to move around the country to work and live [has] continued to improve." U.S. Dep't of State, Bureau of Democracy, Human Rights & Labor, Country Reports on Human Rights

10

Practices: China, at 22–23 (2002).  They also establish that Chinese who have left China illegally and returned are subject to moderate fines but not generally punished severely unless they are alien smugglers.  This defeats Qiu's argument that he would suffer reprisals from the government if he is returned to China.  See U.S. Dep't of State, Bureau of Democracy, Human Rights & Labor, China: Profile of Asylum Claims & Country Conditions, at 41 (1998).

Accordingly, the IJ's determination that the threats aimed at Qiu and his family did not rise to the level of persecution is supported by substantial evidence and will be upheld.  Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004).  Qualification for withholding of removal requires an alien to demonstrate by a clear probability that, on return to his home country, his life or freedom would be threatened on the basis of his race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3)(A).  This is a higher standard than that required for asylum.  Accordingly, the IJ did not err in denying Qiu's claim for withholding of removal.  See Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir. 2005).

Finally, Qiu has not demonstrated that it is "more likely than not" that he will be tortured if returned to his country, entitling him to relief under the CAT.[3]   8 C.F.R. §

---

[3]Article 3 of the Convention Against Torture prevents a court from returning an alien to a country "where there are substantial grounds for believing that he would be in danger of being subjected to torture."  1984 United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G. A. Res. 39/46, U. N. GAOR, 39th Sess. Supp. No. 51, at 197, U. N. Doc. A/39/51 (1984) ("CAT").  Article I of the CAT defines torture as:

1208.16(c)(2); <u>Berishaj v. Ashcroft</u>, 378 F.3d 314, 332 (3d Cir. 2004). A CAT claim requires an alien to establish by objective evidence that he is likely to be tortured in the future. <u>Zubeda v. Ashcroft</u>, 333 F.3d 463, 471 (3d Cir. 2003). The IJ's determination that Qiu did not prove a likelihood of torture is a factual determination, which we review to determine whether it is supported by substantial evidence on the record considered as a whole. <u>INS v. Elias-Zacharias</u>, 502 U.S. 478, 481 (1992); <u>Zhang v. Gonzales</u>, 405 F.3d 150, 155 (3d Cir. 2005).

In this case, Qiu's claim that he is likely to be subject to torture falls short for the same reasons as his claims for asylum and withholding of removal. As explained above, there appear to be many options for Qiu to protect himself from the threats aimed at him by the village chief, including reporting them to superior authorities, borrowing money to pay back his father's gambling debt, or relocating within China. In addition, the CAT provides for withholding of removal when torture "is inflicted by or at the instigation of

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions.

<u>Id</u>.; <u>see also</u> 8 C.F.R. § 1208.18(a) (incorporating and elaborating on this definition of torture).

or with the consent or acquiescence of a public official or other person acting *in an official capacity*." CAT, Art. I; 8 C.F.R. § 1208.18(a)(1) (emphasis added). The village chief was acting out of a personal motivation, not in his official capacity. Accordingly, we see no facts in this case which would compel us to disagree with the IJ's determination that Qiu had not demonstrated a likelihood of torture. <u>See</u> 8 U.S.C. § 1252(b)(4)(B); <u>INS v. Elias-Zacharias</u>, 502 U.S. 478, 481 (1992).

III.

For the foregoing reasons, the petition for review is denied.